Argued and submitted July 24, reversed and
remanded with instructions October 12, 1981

In the Matter of the Compensation
of Darrell C. Johnson, Claimant.

JOHNSON,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 79-2615, CA A20266)

634 P2d 488

S. David Eves, Corvallis, argued the cause for petitioner. With him on the brief was Ringo, Walton, Eves & Gardner, P.C., Corvallis.

Darrell Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent. With him on the brief were K.R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

The sole issue presented in this workers' compensation appeal is the compensability of claimant's aggravation claim. Claimant appeals from the Order on Review of the Workers' Compensation Board which affirmed the denial of the claim by the hearings referee.

The essential facts are as follows:

Claimant is a 58 year old auto body and paint specialist previously employed by Stoddard Chevrolet in Albany. On September 1, 1976, while so employed, claimant suffered a disabling compensable injury to his lower back while closing the door of the paint room. By determination order dated May 18, 1977, claimant received temporary total disability, temporary partial disability, and an award of compensation equal to 48 degrees for 15 percent unscheduled disability. Claimant appealed to the board from this determination order, and on October 10, 1977, settlement was reached by stipulation awarding claimant an additional 64 degrees unscheduled disability for injury to his low back.

In November, 1977, claimant returned to work and continued working for the same employer until February, 1979. Claimant testified that on or about January, 1978, in the course of his employment, claimant again hurt his back while removing a windshield. The medical expenses for this injury were apparently accepted as part of the original claim.

Claimant testified that his condition has progressively deteriorated since September, 1977, with the most significant deterioration occurring since February, 1979. Claimant asserts that his ability to work was limited after his original injury, and his performance continued to decline until he was released from his employment in February, 1979. At the time of the hearing on April 3, 1980, claimant testified that while working he was required to take rest periods of as long as two hours; that he still experienced extensive muscle spasms and was forced to lie on a heating pad for one to two hours every day; that he could sit or stand for only ten to fifteen minutes before experiencing severe pain which forced him to lie down; and

that he had difficulty sleeping and often arose around 3 a.m. to lie in the bathtub or on a heating pad because of severe back pain.

On February 12, 1979, claimant returned for examination to his physician, Dr. Bassinger. Dr. Bassinger noted decreased range of motion of his back and subjective evidence of deterioration and referred claimant to Dr. Chen Tsai for neurosurgical consultation. Dr. Bassinger, in his report dated February 14, 1979, stated as follows:

"A review of my records for comparison of these findings prior to 9-77 note no change on his physical examination except for the fact that there has been some decreased range of motion of his back. * * *

"In summary this patient has a chronic low back sprain associated with a hyperlordosis and osteoporosis. The back strain and hyperlordosis in turn are exacerbated by poor posture and poor muscle tone of the abdominal muscles. There is essentially no objective evidence of increase of this patient's incapacitation since the settlement of 9-77. * * *"

On August 30, 1979, Dr. Tsai examined claimant and found that "the patient's condition has deteriorated as evidenced by my findings on August 30, 1979, related to his industrial injury on 9-6-76." Dr. Tsai's impression was as follows:

"Left L5 and S1 radicular irritation, most likely due to herniation of the nucleus pulposus at L5-S1, to rule out that of L4-5 on the left side related to the injury of 9-1-76 from history."

In support of his opinion, Dr. Tsai identified two major changes in claimant's condition: Weakness of the plantar flexion of the left foot and sensory dermatoma of L5 and S1 on the left side. He stated that claimant's symptomology had been progressive and that claimant's symptoms were consistent with his findings. Prior to the last award of compensation the diagnosis was chronic low back sprain. There was no indication of any nerve involvement.

Following denial of his claim of aggravation by SAIF claimant requested a hearing. The referee after reviewing the above evidence chose not to accept Dr. Tsai's opinion linking the 1976 accident to claimant's neurological deficit first reported in August, 1977. He concluded that

the evidence did not show that claimant's condition was materially aggravated after the last arrangement of compensation.

The case before us boils down to whether to accept the earlier medical opinions of Dr. Bassinger and Dr. Fitchett or the contrary and more recent opinion of Dr. Tsai.

Based upon our *de novo* review of this record, we conclude that claimant has established by a preponderance of the evidence that, since the last arrangement of compensation, he has suffered an aggravation of his previous injury in two respects: 1) weakness of the plantar flexion of the left foot, and 2) a sensory dermatoma of L5 and S1 on the left side. Further he has established that the worsened condition is causally related to the original injury. SAIF introduced no expert opinion to contradict the testimony of Dr. Tsai, which was based on an examination later than the other medical experts. Furthermore, he found two changes in his condition. As we pointed out in *Mattson v. Roseburg Lumber Co.,* 43 Or App 497, 499, 603 P2d 1192 (1979):

"* * * It may well be that if employer had produced any medical evidence refuting that of claimant, the ultimate result might have been what the employer argues for. The employer did not, and thus the uncontroverted medical evidence is that claimant's underlying condition was made somewhat worse by his employment." (Footnote omitted.)

Accordingly, we reverse and remand with instructions to determine the extent of claimant's present disability and to award compensation therefor. ORS 656.273(1).

Reversed and remanded with instructions.