Argued and submitted April 9, reversed September 26, reconsideration denied November 16, 1984, petition for review denied January 22, 1985 (298 Or 553)

In the Matter of the Compensation
of Bill R. Ferguson, Claimant.

FERGUSON,
*Petitioner,*

*v.*

INDUSTRIAL INDEMNITY COMPANY,
*Respondent.*

(WCB No. 81-01210; CA A29970)

687 P2d 1130

W. A. Franklin, Portland, argued the cause and filed the brief for petitioner.

Marshall C. Cheney, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

**WARREN, J.**

Plaintiff appeals an order of the Workers' Compensation Board, claiming that he is permanently and totally disabled.[1] We find that as a result of claimant's compensable physical and psychological conditions he is permanently and totally disabled and reverse.

Claimant is a 44-year-old former supervisor in a frozen food plant. He sustained a compensable injury in October, 1977, while he was attempting to move a 500 pound barrel. Dr. Gillespie, the first of over 25 doctors claimant has seen for his back condition, initially stated: "Though his complaints may be related to some anxiety, he certainly seems to be a hard-working fellow who wants to stay on the job." On January 25, 1978, claimant was hospitalized for psychiatric evaluation and treatment for his compensable anal fissure and back pain. In February, 1978, he underwent a myelogram. Within 48 hours, he was rehospitalized with very acute right chest pain and pain on the inner side of the right arm. Although he recovered and no cause was ever diagnosed for this condition, claimant became convinced that the myelogram caused the pain. A discectomy was done at L4-5 on April 25, 1978. Shortly after the surgery, claimant complained of loss of libido and sexual capacity, which has continued since that time. Drs. Laurnen and Aberle, orthopedic surgeons, concluded that the surgery did not correct the defective L4-5 disc, because the wrong side of the interspace was operated on. Dr. O'Brien disagrees with that conclusion.

In June, 1978, claimant was evaluated at the Northwest Pain Center. The consensus there was that he was suffering from moderate to severe depression. The center's psychologist felt that claimant had fair motivation for pain rehabilitation, retraining and returning to employment.

In August, 1978, claimant was released for part-time work at his previous job, which he did from then until January, 1979, when he was hospitalized and fitted with a

---

[1] Claimant was awarded 15 percent unscheduled disability by determination order. The referee found that claimant's psychological condition was not related to the injury but increased the unscheduled disability award to 60 percent. The Board held that the psychological condition was compensable and awarded a total of 75 percent unscheduled disability for all conditions.

flexion body jacket. Thereafter, he was given a back brace, which he was still wearing at the time of the hearing. In May, 1979, he was hospitalized for an allergic reaction to penicillin, which was being taken for a noncompensable condition. In December, 1979, Dr. Laurnen recommended that claimant undergo further surgery at the L4-L5 level. Dr. Platner agreed with the recommendation. Industrial Indemnity denied liability for the surgery, because the recommendation was "directly contrary to the consensus of medical opinion." Claimant did not contest that denial, because he does not want any more surgery.

Through 1979 to the present, claimant has been seen by several psychologists for mental problems. An MMPI administered to claimant revealed "very severe hypochondriases." In May, 1981, Dr. Shafer, a clinical psychologist, reported that since December, 1978, he had not seen any improvement in claimant's physical or emotional condition. In June, 1981, Dr. Shafer noted that claimant was slightly more hopeful than he had been before and stated: "Granted these are very minimal and tenuous changes but in this difficult situation any movement is better than none at all."

The medical evidence in this case consists primarily of the report of claimant's treating physician, Dr. Platner, who has stated repeatedly that claimant is totally disabled from gainful employment. That is supported by claimant's chiropractor, Dr. Ames. That, in and of itself, might be sufficient even in the absence of proof of motivation to establish that claimant is permanently and totally disabled. *Wilson v. Weyerhaeuser,* 30 Or App 403, 409, 567 P2d 567 (1977). In addition, claimant has severe psychological problems that we find are related to his compensable conditions and seriously impairs his ability to seek or obtain work.

Before the accident, claimant had never sought or received psychological treatment. Within three months of the injury, he was hospitalized partly for psychiatric evaluation. As noted by the Board, his treating psychologist testified that claimant's

"* * * marital problems had stemmed from claimant's failure to adjust following his industrial injury. Dr. Shafer felt there had been a spiraling effect in that the psychological problems stemming from the injury had worsened the marital

problems which in turn worsened the psychological problems."

The end result of this spiral was "marked loss of self esteem sinking into a passive, helpless victim role and self image," which, together with other emotional factors, "militate[s] against his successful rehabilitation." Claimant's severe psychiatric problems, when combined with his physical disability, make it impossible for him to seek or obtain gainful employment.[2] *See Patitucci v. Boise Cascade Corp.,* 8 Or App 503, 495 P2d 36 (1972).

We find that claimant has established by a preponderance of the evidence that, because of his physical and psychological conditions, he was permanently and totally disabled from gainful employment as of January 2, 1981, when he was found to be medically stationary.

Reversed; claimant is awarded permanent total disability as of January 2, 1981.

---

[2] Claimant also claims that he was not medically stationary when the claim was closed due to his psychological problem. We disagree.